**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:    1:22-cv-01963-RMR-SKC

**TINA FRANKLIN**, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

**TSCHETTER SULZER, P.C.**, a Colorado professional corporation,

    Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

**I.   INTRODUCTION**

This alleged class action challenges Defendant Tschetter Sulzer, P.C.'s ("Defendant" or "Tschetter")[1] systemic violations of the Fair Debt Collections Practices Act ("FDCPA" or "Act"), 15 U.S.C. § 1692 *et seq*. Specifically, and as its own Motion to Dismiss admits, Tschetter adds late fees and attorneys' fees to the rent allegedly owed and to the amount a tenant needs to pay to cure their default, and avoid eviction, under statute—both of which are proscribed by Colorado law.

Rather than admit error—let alone take steps to correct its deceptive practices—Tschetter seeks to dodge liability at the pleadings stage by attacking the subject matter jurisdiction and the sufficiency of the Complaint. Indeed, relying entirely on the case of *Cook v. Hamrick*, No. CIV.A. 02-K-768, 278 F.Supp.2d 1202 (D. Colo. Aug. 20, 2003), Tschetter argues that its inclusion of

---

[1] As set forth in the Complaint, Tschetter boasts that it "files thousands of cases every year against tenants in which it seeks judgment for possession and/or money damages for the nonpayment of rent. Tschetter describes itself as "#1 in Colorado Evictions." (*See* https://www.thslawfirm.com.) (Dkt. #1, ¶8)

1

attorneys' fees in its demands for payment and eviction filings are, as a matter of settled law, not communications made in connection with the collection of any "debt" under the FDCPA. As explained below in Section III.XX, infra, however, *Cook v. Hamrick* offers Tschetter no refuge. That case involved a forcible entry and detainer action over a noise complaint, not for the nonpayment of rent like Franklin's eviction here. Indeed, the overwhelming weight of authority holds that Tschetter's improper demands for attorneys' fees and late fees both fit squarely within the FDCPA's definition of a "debt."

Unable to prevail on jurisdictional grounds, Tschetter asserts that the Complaint should be dismissed under Rule 12(b)(6) because the lease provisions it relied on pre-date the statutory tenant protections Franklin claims Tschetter violated. This strains credulity. The tenant protections Franklin alleges were violated contain no exemption for leases already in existence—it is no defense to claim that the unlawful provisions were "grandfathered in." Moreover, Tschetter ignores the fact that Franklin's lease contains a one-way attorney's fee provision specific to the filing of an eviction action.

Tschetter also claims the Complaint[2] should be dismissed because the eviction action wasn't *solely* for the non-payment of late fees. This also fails. Tschetter attempts to rewrite C.R.S. § 38-12-105(1)(d) by improperly adding the word "solely" into the language of the statute where it does not exist.

Tschetter also posits that the fees it sought to collect were lawful because Tschetter included them in its demands for rent or possession. Tschetter misreads the statute to the point of

---

[2]Plaintiff's counsel resolves to be more careful with respect to its filings going forward and apologizes for any inconvenience due to the citation to the incorrect section of C.R.S. § 38-12-105 ((1)(e) instead of (1)(d)) and the appending of the incorrect demand. To the extent an amended pleading is required at this time, Plaintiff requests leave to do so following the Court's ruling on the pending motions so as to address any necessary changes in a single amended pleading.

absurdity: nowhere does C.R.S. §13-40-115(4) state that unlawful charges may be rendered lawful merely through their inclusion in a demand for rent or possession. Indeed, there would be no unlawful charges under such a reading—landlords could "legalize" their activity simply by including unlawful, unsupported sums in their demands. The legislature never intended such a result, and the Court should refuse to rewrite the statute for Tschetter's benefit.

In short, and as explained more fully below, the Court should reject Tschetter's bid for dismissal. Tschetter cannot overcome the express allegations of the Complaint—particularly when they are to be construed in a light most favorable to Plaintiff—simply by disagreeing with them. Nor is Tschetter free to rewrite Colorado law by inserting language that isn't there. As such, the Court should deny Tschetter's Motion to Dismiss.

**II.     CORRECTIONS TO DEFENDANT'S MISSTATEMENTS OF FACT** For the sake of the record, Tschetter makes two material misstatements of fact that bear correction. First, Tschetter states that Franklin paid her landlord the total amount due of $365.35 on February 25, 2022 rather than on February 24, 2022 as she alleges in her Complaint. (Dkt. 14, 6). Tschetter points to its tenant ledger for Plaintiff, which reflects payment as of February 25th. Emails between Tschetter and its landlord client, however, confirm that Franklin did in fact pay the $365.35 on February 24, 2022. *See* Landlord/Tschetter Email Exchange, a true and accurate copy of which is attached hereto as **Exhibit 1**. As evidenced by those emails, Franklin's landlord writes:

> Hi Judy,
>
> I apologize there was a misunderstanding they brought the payment in the end of the day on the 24th and by the 25th we had the court day and I added the fee before posting the money. We did refund the resident the legal fees. Can we please cancel the court as well.

*See* **Ex. 1**. This "misunderstanding" could have been avoided had Tschetter confirmed the factual basis for the eviction lawsuit prior to filing it.

3

Second, Tschetter erroneously claims that Franklin's lease contains a prevailing party clause and not a proscribed one-way fee shifting clause. (Def. Mot., Dkt. #14, 9-10). While the prevailing party language Tschetter points to in its Motion admittedly is in Plaintiff's lease in a subparagraph styled, "Other Remedies", Tschetter ignores the specific one-way fee provision in the lease's "Rent and Charges" subparagraph, its enforcement of which is at issue in this case:

> If you make any payment in response to an eviction notice after the notice has expired, you shall pay us our current eviction administrative fees and attorney's fees.

(Dkt. #1-6, 2). Franklin alleges that Tschetter sought to collect the attorney fee charge at the time the eviction collection action was filed rather than following a determination that it, Tschetter, had prevailed in the case, and that in doing so, Tschetter communicated that the attorney fee had to be paid in addition to other amounts for a tenant to exercise their statutory right to cure. (Compl. Dkt. #1, ¶¶ 16, 42, 46-47, 51, 71).

With these facts clarified, the Court should refuse to dismiss the Complaint as explained below.

**III.   ARGUMENT**

This case plainly raises a federal question under the FDCPA. Yet Tschetter seeks dismissal under Rule 12(b)(1) on the grounds that its deceptive conduct supposedly did not occur in connection with the collection of a "debt". (Def. Mot., Dkt. #14, 8-9.) That question goes directly to the merits. Where, as here, "the jurisdictional facts are intertwined with the facts central to the merits of the dispute, a presumption of truthfulness should attach to the plaintiff's allegations." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (explaining that "[i]n that situation, the defendant has challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action. A trial court should then afford the plaintiff the procedural safeguards—such as

4

discovery—that would apply were the plaintiff facing a direct attack on the merits."); *see also Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.1981).[3]

Under Rule 12(b)(6) Tschetter argues that the Complaint should be dismissed on three purported grounds: (1) Franklin's lease pre-dates the statute in question and contains a two-way fee provision in any case, (2) C.R.S. § 38-12-105(1)(d) only applies to evictions based *solely* on the nonpayment of late fees, and (3) Colorado law allows a landlord to charge unlawful fees so long as those fees are included in a demand for rent or possession. (Def. Mot., Dkt. 14, 9-13.) The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint is "legally sufficient to state a claim…." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998).

---

[3] As such, to the extent the Motion to Dismiss under Rule 12(b)(1) isn't denied outright, the Court should allow discovery.

As explained below, Tschetter's arguments are devoid of merit, and the Court should reject Tschetter's bid to dismiss.

### A. Tschetter's attack on subject matter jurisdiction under Rule 12(b)(1) falls apart—Tschetter's communications were unmistakably made in connection with the collection of a "debt."

Tschetter asserts that the Court lacks subject matter jurisdiction because its deceptive conduct supposedly didn't occur in connection with the collection of any debt. In making this argument, Tschetter relies (almost exclusively) on *Cook v. Hamrick*, No. CIV.A. 02-K-768, 278 F.Supp.2d 1202 (D. Colo. Aug. 20, 2003) to assert that a request for attorneys' fees in an eviction lawsuit is not a debt under the FDCPA as a matter of law. This argument fails.

First, Tschetter reads *Cook v. Hamrick* too broadly. In that case, a tenant had faced eviction "after a neighbor complained Cook was causing noise disturbances in violation of her lease." 278 F. Supp. 2d at 1203. In dismissing the FDCPA claim, the court explained that "[w]hen an obligation to pay is created by something other than a consumer transaction, the obligation is not a 'debt' as defined by the FDCPA." *Id*. at 1205. The Court ultimately held that:

> Because the prayer for attorney fees at issue in this case, as well as any right of AIMCO to collect those fees, would have arisen out of the legal proceedings in the action for unlawful detainer and not out of any consumer transaction with Cook, it does not constitute a "debt" or a communication regarding a "debt" and the FDCPA does not apply.

*Id*. At no point was past due rent at issue in *Cook* and the only source for the attorney fee claim at issue in *Cook* was the prayer for relief in the eviction complaint.

That is a far cry from the instant case. Unlike *Cook*, the underlying eviction action was based partly on the non-payment of rent and included a money claim premised on the nonpayment of rent and extraneous fees such as late fees and attorney fees—all arising from the Plaintiff's lease. (*See* Dkt. # 1, ¶¶ 30-31, 45; *see also* Dkt. # 1-5 ("Complaint Unlawful Detainer and Money

6

Claim"); *see also* Dkt. # 1-6, ¶ 6). As such, the money Tschetter attempted to collect from Franklin and the alleged class members in this case was an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes…." 15 U.S.C. § 1692a(5). This is *not* a situation, as was the case in *Cook*, where the supposed debt arose from nothing more than a prayer for relief in the eviction action.[4]

Courts faced with the question of whether an eviction action may constitute an attempt to collect a debt under the FDCPA have routinely held that evictions qualify as debt collection—especially where both possession and money damages are sought. *See O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 33 (D. Mass. 2014) ("A synthesis of the existing cases that address the question suggests that an eviction action can implicate the FDCPA, particularly where the eviction action includes some demand for payment tied to the property at issue"); *see also Lipscomb v. Raddatz Law Firm, P. L.L.C.*, 109 F. Supp. 3d 251, 260 (D.D.C. 2015) (disagreeing with *Cook* and explaining that "the Court sees no basis for excluding Defendants' conduct from coverage because it involved attempts to regain possession of the rental properties. Whatever else they may have been seeking, they were clearly attempting to collect money that Plaintiffs allegedly owed."); *see also Travieso v. Gutman, Mintz, Baker Sonnenfeldt, P.C.*, No. 94-5756, 1995 WL 704778, *3,

---

[4] It is true that the court in *Cook* faulted the tenant for asserting "no law or facts to establish that a lease between a landlord and tenant is a 'consumer' transaction under the Act 'for primarily personal, family or household purposes,' or how a claim for attorney fees in an eviction action could constitute an alleged obligation to pay money 'arising out of' that transaction. *Cook*, 278 F. Supp. 2d at 1204. There should be no doubt, however, that residential lease agreements are consumer transactions. Indeed, as the *Hodges* court explained: "Rent, generally defined as '[c]onsideration paid, usu[ally] periodically, for the use or occupancy of property," *Black's Law Dictionary* 1322 (8th ed. 2004), squarely comports with the FDCPA's definition of 'debt' when it is paid for residential purposes, as here." 189 N.J. at 222-24. It would defy reason and undercut the purpose of the Act to conclude that Franklin's *residential* lease wasn't for residential purposes.

1995 U.S. Dist. Lexis 17804, *9 (E.D.N.Y. Nov. 16, 1995) ("…rent clearly fits the definition of debt embodied in the FDCPA") (citing *Emanuel v. Am. Credit Exch.*, 870 F.2d 805 (2d Cir. 1989)).

And it's not just rent: attorneys' fees and late fees that arise out of a rental agreement qualify as debts under the FDCPA as well. In *Medialdea v. Law Office of Evan L Loeffler PLLC*, No. C09-55RSL (W.D. Wash. June 19, 2009), an FDCPA action challenging the collection of attorney fees arising from an eviction action for the nonpayment of rent, the court held that "the fees and costs do qualify as debts under the FDCPA. Under the plain meaning of the FDCPA's definition of 'debt,' fees and costs that an attorney charges as a result of his litigation efforts to enforce a rental agreement do 'arise out of' that rental agreement, however indirectly." *Id*. at 8. Similarly, the court in *Porras v. Vial Fotheringham LLP*, explained that:

> Although Defendants may be correct in their position that late fees, attorneys' fees, and collection costs do not, in isolation, arise from a transaction, there is nothing in the FDCPA definition of a "debt" that requires the liability to arise directly out of a transaction. In fact, the FDCPA definition of 'debt' speaks in broad terms by including "any obligation . . . arising out of a transaction…" When, as here, the late fees, attorneys' fees, and collection costs are all associated with an obligation that arises directly out of a transaction … the fees and costs similarly arise out of a "transaction" under the FDCPA. (internal citations and quotations omitted)).

3:13-cv-00699-BR, at *28 (D. Or. May 21, 2015). As such, the Court may likewise conclude that the late fees and attorneys' fees sought against Franklin also arose out of the lease transaction.

To be sure, the FDCPA has also been applied specifically to law firms engaged in eviction collection actions that, contrary to law, seek "all rent, late charges, attorneys' fees, and miscellaneous fees as 'rent' owed" without informing tenants 'that they were only required to pay statutorily-defined rent to avoid eviction.'" *Hodges v. Sasil*, 189 N.J. 210, 216 (N.J. 2007). As the *Hodges* court reasoned:

> The facts of this appeal demonstrate that summary dispossess litigation is an effective — and at times coercive — mechanism for collecting rent and other fees. The litigation's dual objectives of collecting rent and evicting tenants are reflected

8

> in the language of Feinstein's summonses and complaints, which simultaneously inform plaintiffs that the complaint's "purpose . . . is to permanently remove you . . . from the premises" and that rent is "due, unpaid and owing." The realities are even more telling. During oral argument, Feinstein's counsel estimated that approximately one half of all summary dispossess proceedings result in tenants remitting owed rent to stave off eviction. And, on every occasion in which Sasil, through Feinstein, commenced summary dispossess proceedings against plaintiffs, the Hodges sisters uniformly remitted back rent and often remitted amounts exceeding the minimum needed to prevent eviction…
>
> …Often, an implicit, if not overt, goal in summary dispossess actions — an objective repeatedly achieved by Feinstein — is the securing of payment of back rent. The tenant and landlord understand the summons and complaint to be a demand for payment of rental arrears, a demand that prompts defaulting tenants to pay owed rent and frequently, as alleged here, coerces those tenants to pay additional fees unnecessary to prevent eviction.

*Id*. at 226-28 (N.J. 2007). The same rationale applies here. Tschetter files thousands of eviction proceedings, and those actions are an effective mechanism for collecting rent and other fees. Hence, try as it may to wedge the facts of the case at bar into *Cook*, the facts are simply different. Courts around the Country have applied the FDCPA to eviction proceedings where rent or other monies are sought. The Court should refuse to dismiss for a lack of subject matter jurisdiction as a result.[5]

As a final point here, it is worth mentioning that Tschetter's argument for dismissal under Rule 12(b)(1) applies only to the allegations related to the collection of attorney fees. Franklin's claim under the FDCPA is also based on allegations challenging Tschetter's collection of late fees. (*See* Compl. Dkt. 1, ¶¶ 21-23, 26, 35, 42-46, 52-53, 69-71). Tschetter offers no argument challenging the Court's subject matter jurisdiction to hear Franklin's claims related to Tschetter's attempts to collect late fees from her and the prospective class. As such, Tschetter's jurisdictional

---

[5] Again, to the extent the Court has any doubts as to jurisdiction, even after reading the Complaint in a light most favorable to Plaintiff, the Court should allow for a period of reasonable discovery regarding the nature of Tschetter's eviction filings, including the frequency with which summary eviction proceedings result in tenants remitting owed rent to stave off eviction. *See Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009), *infra*.

argument doesn't dispose of the entire lawsuit even if the Court were to adopt it (which, again, it should not). Having disposed of the Rule 12(b)(1) attack, Plaintiff now turns to Rule 12(b)(6).

### B. Franklin's Complaint contains sufficient factual details that, when viewed in a light most favorably to her, state a plausible claim for relief.

Unable to demonstrate that the Court lacks subject matter jurisdiction, Tschetter offers three arguments for dismissal under Rule 12(b)(6). Again, for convenience, they are: (1) that the law doesn't apply because Franklin's lease pre-dates the statute in question and contains a two-way fee provision in any case, (2) that C.R.S. § 38-12-105(1)(d) supposedly only applies to evictions based *solely* on the nonpayment of late fees, and (3) that Colorado law purportedly allows a landlord to charge unlawful fees so long as those fees are included in a demand for rent or possession. (Def. Mot., Dkt. 14, 9-13.) Each of these arguments fails.

#### 1. The Lease is subject to C.R.S. § 38-12-801(3)(b), and fails to comply with it.

C.R.S. § 38-12-801(3)(b) became effective October 1, 2021. It provides that a written rental agreement must not include:

> A one-way, fee-shifting clause that awards attorney fees and court costs only to one party. Any fee-shifting clause contained in a rental agreement must award attorney fees to the prevailing party in a court dispute concerning the rental agreement, residential premises, or dwelling unit.

*Id*. Just as saliently, C.R.S. § 38-12-801(3)(c) states that "any clause in violation of subsection (3)(a) or (3)(b) of this section is null and void and unenforceable." Franklin alleges that in February of 2022—*months after the statute became effective*—Tschetter improperly attempted to collect attorneys' fees and costs under a one-way fee shifting provision in Franklin's lease. (Dkt. 1, ¶¶ 17, 24, 42, 45-47, 71; *see also* Dkt. 1-5.) Indeed, contrary to Tschetter's incorrect assertion, Franklin's lease does in fact include a one-way, pre-prevailing attorney fee clause that applies specifically to the instant context. (Lease Agreement, Dkt. 1-6 ¶ 6 ("If you make any payment in response to an

10

eviction notice after the notice has expired, you shall pay us our current eviction administrative fees and attorney's fees.")). This specific language violates § 801(3)(b), which, again, states that "*Any* fee-shifting clause contained in a rental agreement must award attorney fees to the prevailing party in a court dispute concerning the rental agreement, residential premises, or dwelling unit." (Emphasis added). The provision set forth in the Lease at paragraph 6 plainly is one-way and does not require a prevailing party at all. Rather, the Lease language portends to grant fees to the landlord simply when a tenant pays after the period set forth in the demand. As such, the lease plainly violates the statute.

Tschetter's assertion that C.R.S. § 38-12-801(3) does not apply to *its* conduct because Franklin's lease pre-dates the effective date of the statute seriously lacks credibility.[6] Colorado law rejects the notion that Franklin's lease was somehow "grandfathered in" so that the law did not require a change in Tschetter's practices. *See Vaccaro v. American Family Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012) ("Absent legislative intent to the contrary, a statute is presumed to operate prospectively, meaning it operates on transactions occurring after its effective date. The application of a statute is not rendered retrospective merely because the facts upon which it operates occurred before the adoption of the statute." (internal citations and quotations omitted)). Indeed, Colorado courts will "not enforce contracts or contract terms that are void as contrary to public policy." *Fed. Deposit Ins. Corp. v. Am. Cas. Co*., 843 P.2d 1285 (Colo. 1992); *see also Cummings v. Arapahoe Cnty. Sheriff's Dep't*, 440 P.3d 1179, 1187 (Colo. App. 2018) ("Parties

---

[6] It is worth noting that even Tschetter doesn't actually believe this argument. On March 1, 2022, Tschetter's Eviction Department Supervisor, Judy Pretzer, wrote an email concerning the Franklin's eviction action that "New State Laws require cases to be dismissed with prejudice if the tenant pays in full." **See Emails, Ex. 1**. The new state law Pretzer is referring to is C.R.S. § 13-40-115(4), which also went into effect on October 1, 2021. Pretzer does not assert a carve-out because the lease had been entered into before the effective date of the statute.

11

may not contract to abrogate statutory requirements and thereby contravene the public policy of this state…A contract provision that violates public policy by diluting, conditioning or unduly limiting statutory coverage may be declared void and unenforceable." (internal quotations and citations omitted)). Tschetter's position turns this on its head—courts would be required to enforce contracts that are void as against public policy merely because the contract was entered into before the statute.

As a consequence, Tschetter's argument for dismissal under Rule 12(b)(6) concerning its attempt to collect the $308.00 attorney fee from Franklin and others should be rejected.[7]

2. **C.R.S. § 38-12-105(1)(d) does not include the word "solely", and the Denver Tenant Rights & Resources pamphlet doesn't trump the language of the statute.**

To begin, as Tschetter acknowledges and Plaintiff addresses in footnote 2Plaintiff indeed intended to cite to section (1)(d) of C.R.S. § 38-12-105 and not section (1)(e). For judicial economy purposes, that should not result in the striking of the Complaint or the ordering of an amended pleading prior to a ruling on the Motion to Dismiss.

In any case, Tschetter asserts that § (1)(d) doesn't apply because that provision supposedly governs eviction actions based *solely* on the nonpayment of late fees. This falls apart. The statute does not contain the word "solely," and the Court should refuse to rewrite the law to Tschetter's benefit.

First, section (1)(d) says nothing about evictions based *solely* on the nonpayment of late fees:

---

[7] It is worth noting that Tschetter's attack on Franklin's claim that its efforts to collect attorney fees violates the FDCPA ignores key allegations of the Complaint. Indeed, Franklin also asserts that the $308 attorney fee charge is marked-up beyond what Tschetter bills its landlord clients, that Tschetter is aware of this mark-up, and that because of this mark-up, and also on account of Tschetter's bulk-eviction business model, the representation that the $308 charge is a pass-through charge based on Tschetter's provision of legal services is deceptive and unfair under the FDCPA. (Dkt. #1, ¶¶ 12-17, 26-35, 69-71). The Rule 12(b)(6) Motion should fail for this reason, too.

12

> (1) A landlord shall not take any of the following actions or direct any agent to take any of the following actions on the landlord's behalf:
>
>> (d) Remove or exclude a tenant from a dwelling or initiate a court process for the removal or exclusion of a tenant from a dwelling because the tenant fails to pay one or more late fees to the landlord;

*Id*. The word solely isn't there. Further, language elsewhere in Section 38-12-105 makes clear that Tschetter's re-reading of the statute defies legislative intent. C.R.S. § 38-12-105(7), for example, would be read out of existence if the Court were to insert the word "solely" into section (1)(d). Section 105(7) states, "A late fee is distinct from rent, and a rental agreement may not classify a late fee as rent *for the purposes of section 13-40-104(1)(d)*." (emphasis added). The purpose of section 13-40-104(1)(d) is to enumerate the requirements for a cause of action for unlawful detainer arising from the nonpayment of *rent*:

> (1) Any person is guilty of an unlawful detention of real property in the following cases:
>
>> (d) When such tenant or lessee holds over without permission of the tenant's or lessee's landlord after any default in the payment of rent pursuant to the agreement under which the tenant or lessee holds, and, ten days' notice in writing has been duly served upon the tenant or lessee holding over, requiring in the alternative the payment of the rent or the possession of the premises; except that, for a nonresidential agreement or an employer-provided housing agreement, three days' notice is required pursuant to this section, and for an exempt residential agreement, five days' notice is required pursuant to this section. No such agreement shall contain a waiver by the tenant of the notice requirement of this subsection (1)(d). It is not necessary, in order to work a forfeiture of such agreement for nonpayment of rent, to make a demand for such rent on the day on which the same becomes due; but a failure to pay such rent upon demand, when made, works a forfeiture.

*Id*. Crucially, Section 104(1)(d) requires a landlord to provide a ten-day demand requiring the payment of *rent* or surrender of the premises prior to filing any unlawful detainer action. In doing so, it also creates a corresponding ten-day right to cure for tenants whereby they may avoid being

13

ejected from their homes by paying the rent. C.R.S. § 38-12-105(7)'s prohibition on classifying late fees as rent for the purposes of Section 104(1)(d) thus was clearly meant, and indeed could have no other sensible meaning, to prevent landlords and their collection agents like Tschetter from classifying late fees as rent and including them in the amount that must be paid within the ten-day cure window.[8]

Tschetter's eviction collection complaint and incorporated rent demand further exposes Tschetter's argument as contrary to law. (Dkt. 1-5, ¶ 2; Dkt. 14-A.) The eviction collection complaint sought to collect $664.35 from Franklin. (Dkt. 1-5, ¶ 4.) That amount matches the sum listed in the rent demand as owed when late fees and attorney fees are added to the amount of "Base Rent" due in the rent demand. (Dkt. 14-A, ¶1.) The rent demand is explicit that should a tenant wish to cure after it asserts that late fees are incurred, the tenant must pay the late fees in addition to the rent due. *Id*. Hence, Tschetter demands payment of both the rent and the late fees to halt an eviction. If permitted, section 105(7) would be rendered meaningless: Landlords and their collection agents like Tschetter could simply refuse to accept the payment of rent unless the payment of late fees was also offered and proceed with eviction so as to avoid being in a position where late fees were the solely owed sums. The Court should avoid such a reading. *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1274 (10th Cir. 2017) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (*quoting TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)).

---

[8] To be clear, the ten-day cure window commences on the day the notice is served, not on the day that rent was past due. C.R.S. § 13-40-104(1)(d) ("Any person is guilty of an unlawful detention…When such tenant or lessee holds over … after any default in the payment of rent…, and, ten days' notice in writing has been duly served upon the tenant or lessee holding over, requiring in the alternative the payment of the rent or the possession of the premises…").

14

As a final point here, the "Denver Tenant Rights & Resources" guide has no application to this case, and it should not be considered by the Court. The Court is bound by the language of the statute passed by duly elected members of the Colorado General Assembly—not by a pamphlet drafted by a Denver City government bureaucrat where the word "solely" has been used. The guide should be stricken—the fact that it was included in the Motion at all speaks volumes about the actual language of the statute.

3. **The law does not require tenants to pay otherwise unlawful amounts to cure just because a landlord listed the unlawful amounts in a pre-suit eviction notice.**

For its final argument, Tschetter posits that under the statute, C.R.S. § 13-40-115(4), it can charge unlawful amounts so long as it lists those unlawful charges in its demand for rent or possession. This argument borders on the specious.

Going beyond the initial ten-day cure period provided by Section 13-40-104(1)(d), Section 115(4), which also went into effect October 1, 2021, provided an expanded cure window through the time "until a judge issues a judgment for possession". To exercise this right to cure, a tenant is required to pay "all amounts due according to the notice." Tschetter insists that this should be read to mean "all amounts [the landlord claims are] due according to the notice" while Franklin's position is that "all amounts due" refers to "all *lawful* amounts" due. Only Tschetter's reading produces absurd results and is contrary to the statute's language and purpose. *See Robbins v. Chronister*, 402 F.3d 1047, 1050 (10th Cir. 2005), *on reh'g en banc*, 435 F.3d 1238 (10th Cir. 2006) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.")

The argument that charges expressly proscribed by law are legitimized and rendered non-deceptive because they were included in a demand for rent or possession should be rejected out of

hand. If amounts are not lawful or actually owed, they are not technically "due". Indeed, following Tschetter's "logic", collections agents like Tschetter could assert, without violating the FDCPA, that a consumer owes millions of dollars in fabricated charges, or interest at a rate of 1,000% despite usury laws to the contrary, so long as the charges were included in the collections notice. But Colorado law is clear—a bill rendered void and unlawful by statute cannot be considered due. *See American Family Mut. Ins. v. Centura H*, 46 P.3d 490, 493 (Colo. App. 2002).

Tschetter's Motion conveniently omits the beginning of Section 115(4) which reads, "A landlord who provides a tenant with *proper* notice of nonpayment shall accept payment…" (emphasis added). Indeed, the law requires that the notice be proper, not riddled with false charges. Colorado law has long been clear that a condition precedent to a suit in forcible entry and detainer is a proper pre-suit notice. *Hix v. Roy*, 139 Colo. 457, 458 (Colo. 1959) ("[T]he rule of law…requires, as a condition precedent to a suit in forcible entry and detainer, a proper notice to quit."). Franklin, of course, alleges that the notice was improper because it includes a $308 charge for attorney fees based on a one-way, pre-prevailing fee provision that is expressly disallowed by law. (Dkt. 1, ¶¶ 24, 45-47, 51, 53, 69-71).

As with Tschetter's other arguments, its final basis for dismissal is without merit. Simply because Tschetter included unlawful charges in the demand for rent doesn't render the statute inapplicable. Franklin plausibly states a claim for which relief can be granted.

### III. CONCLUSION

None of Tschetter's attacks prevails. The Court has subject matter jurisdiction to hear the case: Franklin alleges that Tschetter acted improperly in connection with the collection of a debt under the FDCPA, and Tschetter's Eviction Complaint against Franklin unquestionably sought money damages arising from a consumer transaction. Likewise, the Complaint sets forth sufficient

allegations when accepted as true to state a claim for relief under the FDCPA. Tschetter's arguments to the contrary should be rejected. In short, the Court should deny the Motion to Dismiss and award such additional relief as the Court deems necessary and just.

Dated: November 4, 2022      By: /s/ Steven L. Woodrow

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210

Jason Legg
CADIZ LAW, LLC
501 S. Cherry St., Ste. 1100
Denver, CO 80246
jason@cadizlawfirm.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that on the 4th day of November 2022, a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system which will send notification to counsel referenced below.

John M. Palmeri
Tamara A. Seelman
GORDON REES SCULLY MANSUKHANI LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel: (303) 534-5160
*jpalmeri@grsm.com*
*tseelman@grsm.com*

*Attorneys for Defendant*

                                      *s/ Jason Legg*
                                      Jason Legg
                                      One of Plaintiff's Attorneys